19MAG 7464

ORIGINAL

Approved: _____
ROBERT L. BOONE/GINA CASTELLANO
Assistant United States Attorneys

Before:   THE HONORABLE DEBRA FREEMAN
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - x
                                   :
UNITED STATES OF AMERICA           :
                                   :
                                   :
          - v. -                   :
                                   :
BILL TSAI,                         :
                                   :
          Defendant.               :
                                   :
- - - - - - - - - - - - - - - - - x

**SEALED COMPLAINT**

Violations of
15 U.S.C. §§ 78j(b) & 78ff;
17 C.F.R. § 240.10b-5; 18
U.S.C. § 2

COUNTY OF OFFENSE:
New York

SOUTHERN DISTRICT OF NEW YORK, ss.:

TODD KANESHIRO, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI") and charges as follows:

## COUNT ONE
### (Securities Fraud)

1.    From in or about March 2019 up to and including in or about April 2019, in the Southern District of New York and elsewhere, BILL TSAI, the defendant, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails and the facilities of national securities exchanges, in connection with the purchase and sale of securities, used and employed manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, on the basis of material, non-public information that TSAI obtained through

his employment at a particular investment bank in New York, New York, TSAI executed profitable transactions in the securities of Electronics For Imaging, Inc. ("EFI").

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

2.     I have been a Special Agent with the FBI for approximately three years.  I am currently assigned to a squad responsible for investigating violations of the federal securities laws and related offenses.  I have participated in investigations of such offenses, and have made and participated in arrests of individuals who have committed such offenses.

3.     The information contained in this Complaint is based upon my personal knowledge, as well as information obtained during this investigation, directly or indirectly, from other sources, including, but not limited to: (a) emails and other materials provided by the employer of BILL TSAI, the defendant; (b) publicly available documents; (c) trading records; and (d) conversations with, and reports and documents prepared by, another law enforcement officer.  Because this Complaint is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.  Where the contents of documents and the actions and statements of and conversations with others are reported herein, they are reported in substance and in part.  Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

### Relevant Entities and the Defendant

4.     At all times relevant to this Complaint, an investment bank (the "Investment Bank") provided various banking and financial services to clients around the world.  The Investment Bank maintained offices in various cities, including one in New York, New York.  The Investment Bank provided, among other services, financing and consulting to corporate clients in connection with mergers and acquisitions.  In connection with its business, the Investment Bank was in possession of material, non-public information ("MNPI"), including information relating to potential mergers and acquisitions.

5.    At all times relevant to this Complaint, Electronics for Imaging, Inc. ("EFI") was a publicly traded company that specialized in digital printing technology. EFI was headquartered in Freemont, California.  EFI's securities traded under the symbol "EFII" on the Nasdaq Stock Market (the "NASDAQ").

6.    At all times relevant to this Complaint, Private Equity Firm-1 was a private equity firm headquartered in New York, New York.  By at least on or about March 11, 2019, the Investment Bank began working with Private Equity Firm-1 to provide financing for Private Equity Firm-1 to acquire EFI.

7.    At all times relevant to this Complaint, including specifically from at least in or about July 2018 to the present, BILL TSAI, the defendant, has been employed as an analyst in the Corporate Banking division of the Investment Bank in its New York, New York office.  In that role, TSAI was responsible for, among other things, updating a running list of active transactional deals, including mergers and acquisitions, involving clients of the Investment Bank.  As such, TSAI had access to files containing MNPI.

## The Investment Bank's Policies Relating to MNPI and Securities Trading

8.    Based on my review of records supplied by the Investment Bank, I have learned that:

a.    The Investment Bank's written Global Information Barriers Policy makes clear that "Confidential Information obtained directly or indirectly from a client . . . or any other internal or external source, may be used only for the specific purpose or transaction for which it was given.  Any other use without the permission of the client which originally entrusted [the Investment Bank] with the information is a misuse and may result in disciplinary action."  The Policy also provides that "[n]o Employee may 'tip' or trade in a security of any issuer (or any related security) while aware of Inside Information relating to the issuer or the security (or any related security)."

b.    The Investment Bank's written Global Policy on Personal Trading explains that "[u]pon joining [the Investment Bank], Employees are required to disclose the existence of all Employee and Related [Trading] Accounts.  Employees who have Securities Trading Accounts maintained at financial institutions

3

other than the designated institutions referenced herein are
generally required to close or transfer such accounts to a
designated institution within thirty (30) calendar days of
commencing employment . . . . The obligation to disclose all
Employee and Related accounts continues throughout the course of
employment with [the Investment Bank]." The Policy goes on to
list only two firms (collectively, the "Permitted Firms") at
which its United States based employees are permitted to have a
trading account.

      c. On or about July 12, 2018, as part of his
employment with the Investment Bank, BILL TSAI, the defendant,
electronically signed a Personal Accounts Disclosure Form
indicating that he did not have any "employee or employee
related" trading accounts.

## The Defendant's Undisclosed Brokerage Account

      9. Notwithstanding the Investment Bank's policy with
respect to employee trading accounts and the representations of
BILL TSAI, the defendant, as set forth above in Paragraph 8(c),
TSAI in fact maintained a brokerage account at a non-Permitted
Firm that he did not disclose to the Investment Bank.
Specifically, based on my review of documents maintained by a
brokerage firm (the "Brokerage Firm"), I have learned the
following:

      a. In or about February 2015, the Brokerage Firm,
which was not one of the two Permitted Firms as set forth in the
Investment Bank's Global Policy on Personal Trading, approved an
application to open a securities trading account in the name of
"Bill Tsai" (the "TSAI Account"). In the account opening forms
provided to the Brokerage Firm, "Bill Tsai" provided, among
other things, his date of birth, address, email address and
phone number (together, the "Identifying Information"). Based
on my review of documents maintained by the Investment Bank,
BILL TSAI, the defendant, provided the same Identifying
Information to the Investment Bank.[1] Accordingly, I believe that
TSAI is the owner of the TSAI Account.

_____

[1] The address associated with the TSAI Account was updated on or
about November 6, 2017. Based on my review of documents
maintained by the Investment Bank, I have learned that BILL
TSAI, the defendant, provided both the original address and the
updated address to the Investment Bank.

4

b.     The account opening forms for the TSAI Account do
not indicate that anyone other than TSAI had authority to trade
in the TSAI Account.

c.     The TSAI Account has remained open since February
2015 to the present.

### The Defendant's Insider Trading Scheme

10.   As set forth below, there is probable cause to believe
that BILL TSAI, the defendant, used MNPI relating to Private
Equity Firm-1's acquisition of EFI that he misappropriated
through his employment at the Investment Bank to make profitable
securities trades in the TSAI Account.

11.   Based on a review of public news reports, public stock
price information, records maintained by the Brokerage Firm, and
records maintained by the Investment Bank, I have learned the
following, in substance and in part:

a.     By at least on or about March 11, 2019, the
Investment Bank began working to provide financing to Private
Equity Firm-1 on its possible acquisition of EFI (the "EFI
Deal").   Information relating to the EFI Deal, including its
existence, was non-public and confidential.

b.     By at least on or about March 11, 2019, BILL
TSAI, the defendant, exchanged emails and documents within the
Investment Bank containing material, non-public information
concerning the EFI Deal.

c.     For example, on or about March 13, 2019, BILL
TSAI, the defendant, sent an email to another employee of the
Investment Bank stating, "Please see attached for EFI RWA
pipeline input for your review.   Thank you."   Attached to TSAI's
email was an excel spreadsheet naming EFI as a deal "In the
Pipeline," and Private Equity Firm-1 as the "Deal Sponsor" for
that transaction.   The transaction is described in the comments
section as an "LBO," which, based on my training and experience
and participation in this investigation, I understand to mean
"leveraged buyout."

d.     Starting on or about March 29, 2019, and
continuing until on or about April 12, 2019, BILL TSAI, the
defendant, bought EFI call options[2] using the TSAI Account.

---

[2] Based on my training and experience, I know that a call option
is an option to purchase stock at a particular price within a

Specifically, TSAI bought 187 EFI call options, for a total price of approximately $28,410. The call options had a strike price of $30 and an expiration date of July 19, 2019. At the time of these purchases, EFI shares were trading below the strike price.[3]

        e.    On or about April 15, 2019, a Monday, at approximately 8:00 a.m. Eastern Standard Time, before the market opened, EFI publicly announced that it would be acquired by an affiliate of Private Equity Firm-1. At the close of the market of the previous trading day, April 12, 2019, EFI's stock price closed at $29.40. By the close of the market on April 15, 2019, EFI's stock price had risen to $38 per share, an approximately 29.25% increase from the previous trading day's close.

        f.    On or about April 15, 2019, at approximately 9:37 a.m. Eastern Standard Time, after the announcement of the EFI Deal, TSAI placed an order to sell all 187 EFI call options in the TSAI Account. TSAI's trading activity in EFI options resulted in a profit of approximately $98,750.

        g.    Based on a review of trading activity in the TSAI Account, I have learned that, prior to the trading activity described above, there had been no previous trading in the TSAI Account of EFI securities.

[Additional Text on Following Page]

---

specified time period. Purchasing call option contracts is consistent with a belief that the price of the underlying security will increase.

[3] Based on my training and experience, I know that the share price of a publicly traded company often increases in value upon the public announcement that the company is going to be acquired by another company.

WHEREFORE, I respectfully request that an arrest warrant be issued for BILL TSAI, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

TODD KANESHIRO
Special Agent
Federal Bureau of Investigation

Sworn to before me this
9th day of August 2019

HONORABLE DEBRA FREEMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK